```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ERIC S. BATTAGLIA,                                          :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
                                 Plaintiff,                 :
                                                            :    17-cv-3852 (BMC)
                - against -                                 :
                                                            :
NANCY A. BERRYHILL,                                         :
                                                            :
                                 Defendant.                 :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

1. Plaintiff seeks review of the decision of the Commissioner of Social Security that he is not disabled for the purpose of receiving disability-insurance benefits. The Administrative Law Judge ("ALJ") found that plaintiff has a number of severe impairments, including lumbosacral radiculopathy, post-concussion syndrome, headaches, cervicobrachial syndrome, cervical radiculopathy, cervical spondylosis, myalgia, CTL myofascitis, bilateral shoulder impingement, carpal tunnel syndrome, and chronic pain syndrome.

2. Despite this impressive list, the ALJ found that plaintiff had sufficient residual functional capacity ("RFC") to perform less than the full range of sedentary work. Specifically, the ALJ found that plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently, could stand or walk for up to two hours and sit for up to six hours in an eight-hour day, and that he could occasionally climb, balance, stoop, kneel, crouch, and crawl. Because it was undisputed that there are jobs in the national economy commensurate with these abilities, the ALJ found plaintiff not disabled.

3. Before this Court, plaintiff raises two points. First, he contends that the ALJ improperly discounted the opinions of his two treating physicians, Dr. Igor Cohen, a neurologist, and Dr. Ji Han, an anesthesiologist with a specialty in pain medicine. According to plaintiff, the ALJ should have weighed these opinions either as controlling by themselves or, in considering them together with the other record evidence, accepted them as most probative of plaintiff's RFC considering their status as the opinions of treating physicians. Plaintiff's second point of error is that the ALJ did not articulate a sufficient basis for discounting plaintiff's credibility.

4. Before addressing these two points, I note that this case presents the not-infrequent situation where the Commissioner has done a better job in court of defending and substantiating the decision of the ALJ based on the record than does the decision of the ALJ itself. Plaintiff relies on cases like Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008), for the proposition, contrary to the usual rule in appellate practice, see Latner v. Mount Sinai Health System, Inc, 879 F.3d 52, 54 (2d Cir. 2018), as amended (Jan. 9, 2018), that this Court cannot affirm the ALJ on grounds different than those on which she relied. But that is not the situation here. The Commissioner is seeking affirmance on the very grounds expressed by the ALJ – that the ALJ properly discounted the opinions of the treating physicians and that plaintiff was not a credible witness – but the Commissioner has supplemented the ALJ's reasoning in support of those grounds.

5. It seems to me that a reviewing court confronted with this situation might ask: (1) whether the ALJ articulated sufficient grounds for her conclusions to permit meaningful judicial review, see Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013); and (2) in light of the additional reasoning that the Commissioner offers on review and the plaintiff's response to that

reasoning, whether a remand for rehearing would allow a reasonable possibility that an ALJ might reach a different conclusion, without which the remand would be an exercise in futility.

6. As to plaintiff's first point of error – that the ALJ improperly discounted the views of two of his treating physicians – I believe that the ALJ did provide sufficient grounds for review and that there is not a reasonable possibility that, on remand, an ALJ might reach a different conclusion.

7. The two opinions by physicians which plaintiff contests here and which the ALJ accorded "little weight" are extremely marginal treating-physician opinions. Dr. Han saw plaintiff on only one occasion for not more than 75 minutes. He thus barely "treated" him at all, except, at the end of that one session, to prescribe steroid shots and prescribe Tylenol #3 and a mild muscle relaxant. Dr. Han's notes under "plan" also state "schedule for cervical epidural steroid injection C6/7," but plaintiff himself testified that he never received this injection and there is no evidence that he did. I see no reason why the ALJ should have given more weight to Dr. Han's opinion than that of any single-evaluation consultant.

8. Besides, it is not as if Dr. Han gave such overwhelming opinion evidence to support a finding of disability. His examination notes showed mostly normal results, other than some back tenderness, positive leg raises, and decreased range of motion in the lumbar spine. Of course, he did observe the same musculoskeletal anomalies from plaintiff's prior CT scans that anyone else who read them observed, but there was no dispute about that; the issue, rather, was what those results meant for plaintiff's RFC. Even Dr. Han's evaluation form (which was prepared at least four months after the single examination which he had undertaken), showed plaintiff able to sit for six hours, which is not so inconsistent with the ALJ's RFC finding. (This is not to say that, had the ALJ agreed with Dr. Han's evaluation form, she could have found the

3

same RFC, because agreeing with all of Dr. Han's conclusions would have required a different finding.)

9. Dr. Cohen, at least, had a better longitudinal relationship with plaintiff: he saw plaintiff four times over an eight-month period. But the ALJ discounted Dr. Cohen's opinion because Dr. Cohen's reports were "repetitive" and reflected "few treatment modalities." Plaintiff criticizes the ALJ's term "repetitive," arguing that it is a synonym for "consistent," and thus supports the reliability of Dr. Cohen's findings rather than impeaching those findings. Plaintiff also points to the caselaw holding that the failure of a physician to prescribe or a claimant to undertake radical intervention alone is not an indicator of non-disability. See Burgess, 537 F.3d at 129. Although the ALJ could have used more direct language, I think plaintiff is missing her point.

10. It is not just that Dr. Cohen reported that plaintiff's conditions remained the same. It was that the language Dr. Cohen used in his treatment notes from plaintiff's second visit was cloned from the treatment notes from plaintiff's first visit, and the treatment notes from plaintiff's last two visits were verbatim reproductions of the treatment notes from his second visit (with only the dates and plaintiff's increased age changed). This raised some troubling questions.

11. For example, in the section of the treatment notes reflecting the plan for plaintiff going forward, the second set of treatment notes recommended that plaintiff "initiate physical therapy two times a week for eight weeks with the appropriate regimen of therapeutic modalities and exercises;" that plaintiff "have cervical and lumbar trigger point injections." Dr. Cohen prescribed "Percocet 5/325 TID PRN . . . and continue Neurontin." The third and fourth sets of treatment notes contained the identical plan verbatim; only the word "initiate," in reference to

4

physical therapy, was changed to "continue." The other sections of the treatment notes are also verbatim copies of their predecessors.

12. We thus do not know what Dr. Cohen was thinking about the effect, if any, that physical therapy had on plaintiff; we do not know why plaintiff never got the trigger-point injections that Dr. Cohen recommended in each note using the same language, and if he did, what effect, if any, the injections might have had on plaintiff's condition. The primary point we can derive from Dr. Cohen's treatment notes is that plaintiff showed up for an evaluation every six to eight weeks and received a prescription for Percocet (Tylenol and oxycodone) to be taken five times per day. Nothing else changed.

13. Although not mentioned in the ALJ's decision, this absence of treatment except for pain medication is important because Dr. Cohen did not know about plaintiff's use of cocaine. The issue thus again becomes, if plaintiff wants Dr. Cohen's opinions considered based on his status as a "treating" physician, what was the treatment? Having plaintiff show up every six weeks to get a new prescription for a reasonably powerful opiate (especially if taken five times per day over eight months) doesn't seem like much treatment. That, I think, is what the ALJ meant when she said that Dr. Cohen's notes were "repetitive" and that there were "few treatment modalities," *i.e.*, little treatment. As was the similar problem with Dr. Han, it seems to me that the term "treating physician" usually includes some treatment, not just a rote reiteration of prior observations and an opiate prescription.

14. One significant reason that Dr. Cohen may not have really treated plaintiff is because he saw plaintiff very late in the game, as the Commissioner points out (although the ALJ did not). Plaintiff sought to establish a disability onset date of November 1, 2010, and his date last insured was December 31, 2013. He did not see Dr. Cohen for the first time until May 1,

5

2014, nearly four months after the end of his insured period. By that time, plaintiff's conditions had pretty much calcified, that is, he had reached maximum cure, at least in the absence of newly attempted therapies.

15. Thus, the first appointment with Dr. Cohen was more than a year after rejection of plaintiff's disability application and his prompt request for a hearing before an ALJ. Indeed, perhaps most significantly, this first appointment with Dr. Cohen was just one month before the scheduled hearing, after a long break in receiving medical care. When one considers this timing in conjunction with the fact that plaintiff was at all relevant times represented by able counsel, and that Dr. Cohen did not follow through on any specific treatment for plaintiff, one could be pardoned for concluding that the purpose of plaintiff seeing Dr. Cohen was less about obtaining treatment and more about building a record for the upcoming hearing.

16. Not that there's anything wrong with that. But if plaintiff wants to rely on the treating-physician rule as his point of error, then in light of this factual background, it would improve his position if he could point to the treatment that he received. It seems to me that the ALJ was entitled to discount the opinions of both Dr. Han and Dr. Cohen because, for different reasons, they were both effectively "treating physicians" in name only.

17. The ALJ came close to saying as much directly with respect to Dr. Han, and I think her use of the words "repetitive" and "few treatment modalities" carried the same implicit suggestion as to Dr. Cohen. Of course, it would have made for easier review had the ALJ used language as blunt as that in this decision or at least as expansive as that in the Commissioner's brief before this Court. But I do not think she had to. Her express recognition that Dr. Han's evaluation was a one-off and that Dr. Cohen's cut-and-pasted examination notes and lack of

meaningful treatment, evaluated against the record summarized above, formed an ample basis for weighing these "treating physician" opinions the way that she did.

18. Plaintiff's second point of error – that the ALJ did not sufficiently articulate the basis for finding plaintiff not fully credible – is a similar attack on the form over the substance of the decision. Certainly, there were a number of reasons why plaintiff could be found not credible, which is perhaps why plaintiff does not address the credibility point at all in his reply brief. Part of the problem stemmed from what seems to be plaintiff's misimpression at the hearing that he was entitled to disability if he could not do the heavy construction work that he previously did, and his testimony was geared towards demonstrating that. I doubt he understood that if he had enough capacity to do sedentary work, even though he had not done it before, he was not entitled to benefits, because he never addressed whether he could do sedentary work. The only answer the ALJ received from him as to why he couldn't work was answered in that context – he couldn't do construction work. That may be why, during his May 2014 hearing before a different ALJ, plaintiff did not hesitate to acknowledge his ability to undertake some activities of daily living in 2011 and 2012 – driving, helping a friend move furniture and household items, walking his dog, and taking a vacation in the mountains.

19. The ALJ also commented on the long gap in plaintiff's treatment once he was dismissed for drug abuse from his treating physician's practice in 2012. Specifically, plaintiff saw no doctors for his medical conditions, other than his one-day session with Dr. Han, until he started seeing Dr. Cohen one month before his hearing. His reasons for that, as the ALJ also noted, were not terribly convincing – at the hearing, plaintiff said that he could not get the recommended back injections from Dr. Han for insurance reasons, and that he did not pursue

other medical treatment because he was depressed, but he also acknowledged that his depression did not keep him from seeking medical treatment.

20. It also seems significant that plaintiff never told Dr. Cohen of his drug-related dismissal from his prior doctor's practice – "He didn't ask, and I didn't tell him," – and that plaintiff acknowledged that, unlike his prior doctor, Dr. Cohen does not require drug testing. There is, in fact, a strong suggestion in the ALJ's decision that plaintiff lied to Dr. Han: when Dr. Han asked him why he stopped taking medication, plaintiff said he "did not like" taking medication, without disclosing to Dr. Han that he wasn't getting any more medication from his prior doctor because he had tested positive for cocaine. And, obviously, plaintiff had no problem with the Percocet from Dr. Cohen.

21. Finally, the ALJ tried hard to get plaintiff to answer her question as to why he claimed an onset date of November 1, 2010, and could not get an answer. Plaintiff's first automobile accident, which seems to be the genesis of his problems, occurred in 2011, as the ALJ pointed out to plaintiff. Plaintiff could not identify any condition or precipitating event that caused him to pick an earlier date.

22. Once again, it would have made for easier review if the ALJ had written: "I find plaintiff not credible for the following reasons," and then listed each of the points set forth above. But most of these are in her decision, and no particular stylistic form is required to facilitate judicial review. Under these circumstances, remanding for a re-determination of credibility would be a futile gesture. The ALJ's determination of credibility was amply based on the record.

23. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's is denied. The Clerk of Court is directed to enter judgment in favor of defendant, dismissing the complaint.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
     February 23, 2018